Jeffrey D. Kaliel (SBN 238293)
*jkaliel@kalielpllc.com*
**KALIELGOLD PLLC**
1100 15th Street NW, 4th Floor
Washington, DC 20005
Telephone: (202) 350-4783

Sophia G. Gold (SBN 307971)
*sgold@kalielgold.com*
Amanda J. Rosenberg (SBN 278507)
*arosenberg@kalielgold.com*
**KALIELGOLD PLLC**
490 43rd Street, No. 122
Oakland, California 94609
Telephone: (202) 350-4783

*Attorneys for Plaintiff and the Classes*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| KAREEM JALAD, on behalf of himself and all other similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SEEL, INC.,<br><br>Defendant. | Case No. 3:26-cv-01181-TLT<br><br>**AMENDED CLASS ACTION COMPLAINT**<br><br>Hon. Trina L. Thompson |

Plaintiff Kareem Jalad, on behalf of himself and all others similarly situated, complains and alleges upon information and belief based, among other things, on the investigation made by Plaintiff and through his attorneys, as follows:

**<u>INTRODUCTION</u>**

1. This is a proposed class action seeking monetary damages, restitution, and public injunctive and declaratory relief from Seel, Inc. ("Seel"), arising from its unfair and deceptive addition of junk fees to consumers' shopping carts.

2. When consumers browse products on e-commerce websites, the e-commerce websites

advertise the price of their retail items, along with an advertisement for either free or flat-rate shipping. Those pricing representations are false, however, because Seel encourages e-commerce retailers to surreptitiously add junk fees to consumer purchases, including Seel's so-called "Worry-Free Purchase" or "Worry-Free Delivery" fees.

3. As discussed in detail herein, the assessment of these fees is deceptive and unfair, since Seel designed a widget that automatically adds "Worry-Free Purchase" or "Worry-Free Delivery" at a late check-out stage and forces consumers to take affirmative action to reject the fee. Further, a reasonable consumer has more reason to confuse the "Worry-Free Purchase" or "Worry-Free Delivery", automatically added to its cart, as mandatory rather than optional because the fee is separate from any basic free shipping promised by the e-commerce retailers. Thousands of e-commerce customers like Plaintiff have been assessed hidden charges for which they did not bargain due to Seel's deceptive and unfair tactics. The practice artificially inflates the advertised value of the transaction and deceives consumers regarding the actual cost of their purchases.

4. Plaintiff seeks damages and, among other remedies, public injunctive relief that will fairly allow consumers to decide for themselves whether they will pay Seel's fees.

## PARTIES

5. Plaintiff Kareem Jalad is a resident and citizen of Riverside, California.

6. Seel is a corporation headquartered in San Francisco, California, that provides services to e-commerce retailers.

## JURISDICTION AND VENUE

7. This Court has original jurisdiction over this action, among other reasons, under the Class Action Fairness Act of 2005. Pursuant to 28 U.S.C. §§ 1332(d)(2) and (6), this Court has original jurisdiction because (1) the proposed Class is comprised of at least 100 members; (2) at least one member of the proposed Class resides outside California; and (3) the aggregate claims of putative Class members exceed $5 million, exclusive of interest and costs.

8. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Seel is subject to personal jurisdiction here and regularly conducts business in this District, and because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District.

## FACTUAL BACKGROUND AND GENERAL ALLEGATIONS

### I. The Rise of Seel

9. Seel offers various services to e-commerce retailers related to shipping, including its purported "Worry-Free Purchase" or "Worry-Free Delivery" ordering.

10. Seel ingratiates itself with e-commerce retailers by promising it can help retailers make more money from the shipping rates they charge consumers. For example, Seel promises to help retailers drive "[r]evenue without the refunds and returns":




11. But the way Seel helps e-commerce retailers reap these profits is through deception. As described herein, Seel directs retailers who use its services to install a widget on their websites. That widget adds a hidden, *pre-selected* box or toggle that automatically adds junk fees, like the fee

seen above, to all orders. This method of adding on fees is designed to go undetected by consumers and thus provide additional revenue to both Seel and e-commerce retailers who use it.

12. On information and belief, Seel designs the interface presented by merchants to consumers regarding the add-on fee, including the name of the fee, the time at which the fee is first mentioned during the checkout process, the time at which the fee amount is added to the purchase price, and the pre-selection of the box or toggle for the fee. On information and belief, Seel also uses sales tactics that pressure merchants into pre-selecting boxes or toggles at checkout that automatically add "Worry-Free Purchase" or "Worry-Free Delivery" and other fees by default.

13. In essence, Seel partners with e-commerce retailers to insert additional charges into consumers' online shopping carts through its checkout widget marketed as "Worry-Free Purchase," "Worry-Free Delivery," or similar terms. These fees are added after consumers are initially shown product prices and representations that shipping is either "free" or available at a flat rate.

14. Seel's representations are deceptive because consumers are not told, at the time they begin shopping or decide to purchase, that Seel's additional fees will later be added to the transaction. Instead, Seel's checkout technology is designed to introduce these charges late in the checkout process, after consumers have already invested time selecting products, entering payment information, and proceeding toward final purchase.

15. Seel intentionally designed its checkout widget to maximize consumer enrollment in these add-on fees through the use of dark-pattern techniques. Specifically, Seel's widget automatically opts consumers into "Worry-Free Purchase" or "Worry-Free Delivery" fees through pre-selected checkboxes, toggles, or similar mechanisms that consumers must affirmatively locate and deselect to avoid being charged.

16. The design and placement of Seel's widget are intended to cause consumers to overlook the additional charges or to believe that the charges are mandatory components of shipping or checkout rather than optional add-on products. The fees are presented in a manner that obscures their optional nature and materially interferes with consumers' ability to make informed purchasing decisions.

17. The *Wall Street Journal* has highlighted this problem, stating:

> Some brands automatically add optional coverage to orders. ***Customers have complained the fees are disclosed in small fonts, made to appear mandatory when they are not or are displayed late in the online checkout process***.

Imani Moise, *Porch Pirates are Now Raising the Price You Pay at Checkout*, Wall Street Journal, Dec. 25, 2024, available at https://www.wsj.com/personal-finance/package-theft-hidden-fee-higher-prices-325c4a34?mod=Searchresults_pos3&page=1 (emphasis added).

18. Upon information and belief, Seel is aware that, by programming its widget to automatically opt in consumers to its "Worry-Free Purchase" or "Worry-Free Delivery" and other similar fees, most consumers will unknowingly purchase these services. Seel is further aware that, if its widget were programmed to offer *optional* "Worry-Free Purchase" or "Worry-Free Delivery" and/or other similar services (requiring an opt-in), the vast majority of consumers would not purchase Seel's services.

19. On information and belief, Seel receives a significant portion of all fees it is able to foist upon consumers, thereby incentivizing Seel to minimize the number of persons who opt out of its fees.

## II. <u>Seel Surreptitiously Adds Fees to Consumers' Carts</u>

20. Here's how Seel's deception works. When a consumer views an item online through an e-commerce retailer that has integrated Seel's widget, the consumer is informed that the item will either be delivered for free or for a flat rate.

21. By way of example, Plaintiff purchased a product from the website Back Country at www.backcountry.com, where he viewed a screenflow substantially similar to the screenflow herein and substantially similar to the screenflows used by merchant's that use Seel's widget. When the consumer selects a product, the consumer is asked to add that item to their online shopping cart:

(Image on next page)




22. Once the item is added to the cart, the consumer is able to checkout from their cart:



23. On the next screen, without the consumer having done anything at all a "Worry Free Purchase" item is added to the consumers cart via a discreet, tiny, pre-checked box purposely designed to go unnoticed by consumers. So, consumers who wish to check out under the assumption that they are receiving free or flat-rate shipping simply proceed through the checkout process without knowing that they are not, in fact, paying an additional cost for shipping. On information and belief, the amount added represents a portion of the transaction.




24. By the time the consumer enters the final checkout page, the damage is done, and the "Worry Free Purchase" that the consumer did not affirmatively select or add to their cart cannot be removed. Consumers are left entirely unaware that the added "Worry-Free Purchase," "Worry-Free Delivery," or similar fee is optional and must be removed by *unchecking* the box adding the fee on a previous page.

(image on next page)




25. Thus, if consumers even *notice* a fee added to their transaction, they are still left entirely unaware that the added fee is optional, because it is presented in the cart as mandatory.

26. This pre-selection and automatic opting in of consumers to junk fees due to Seel's widget is itself unfair and deceptive.

27. Because of Seel's widget, many consumers do not notice that an additional fee is being added to their order. Others believe that they have no choice but to pay this fee. Others notice the previously undisclosed fee but decide to go through with the purchase anyway: they have already invested substantial time and effort inputting their information into the merchant's system to complete their transaction. So it doesn't make sense to start over and research whether there may be some other way to avoid the fee. There is no incentive to reverse course—there is only an incentive to pay the fee, be done with it, and avoid the burden of finding a way to avoid the fee, if the consumer can even figure out how to avoid the fee at all after navigating Seel's deceptive widget. The deceptive checkout practice has done its job and diverted the sale to Seel.

28. As the FTC notes, "[f]or years, unscrupulous direct-mail and brick-and-mortar retailers have used design tricks and psychological tactics such as pre-checked boxes, hard-to-find-and read disclosures, and confusing cancellation policies, to get consumers to give up their money or

data." *FTC Report Shows Rise in Sophisticated Dark Patterns Designed to Trick and Trap Consumers,* Sept. 15, 2022 (available at https://www.ftc.gov/news-events/news/press-releases/2022/09/ftc-report-shows-rise-sophisticated-dark-patterns-designed-trick-trap-consumers).

29. The FTC further notes in its *Enforcement Policy Statement Regarding Negative Option Marketing* that **"[a] 'pre-checked box' does not constitute affirmative consent."** https://www.ftc.gov/system/files/documents/public_statements/1598063/negative_option_policy_statement-10-22-2021-tobureau.pdf at p. 13 (emphasis added). Similarly, an item automatically added to the cart, without having done anything whatsoever to add that item, does not constitute affirmative consent.

**III. Seel's Add-On Fees Obscure and Misrepresent Consumers True Shipping Costs**

30. Even beyond the deceptive way in which Seel's "Worry-Free Purchase" or "Worry-Free Delivery" a reasonable consumer has more reason to confuse a shipping protection fee, automatically added to its cart, as mandatory rather than optional because the shipping protection fee is separate from any basic free shipping promised by the e-commerce retailers

31. As described herein, e-commerce websites that use Seel's widget promise "free" shipping on certain orders and a flat-rate price for shipping on other orders. These are clear promises that the total, marginal cost of having products shipped—that is, moved from the retailer to the consumer—are represented by the "free" or flat-rate shipping price representation.

32. However, Seel decided it could actually charge more for shipping, thereby increasing profitability for both Seel and the e-commerce retailer, by misrepresenting the true shipping costs to consumers.

33. Seel knew or should have known that reasonable consumers would interpret these additional shipping-related charges as mandatory components of delivery, particularly where the charges are automatically added and presented only after consumers have substantially completed the checkout process.

34. By unfairly obscuring its charges to consumers, Seel deceives consumers and gains an unfair upper hand over its competitors.

35. On information and belief, a significant portion of the fee does not even go toward

providing a "Worry-Free Purchase" or "Worry-Free Delivery" (i.e., ensuring the customer the refund they would already be entitled to) but instead goes toward Seel's and e-commerce retailers' profits.

## IV. Seel's Fees are Junk Fees and Violate Federal and State Guidance

36. Seel's "Worry-Free Purchase" or "Worry-Free Delivery" fees are precisely the type of "Junk Fees" that have come under government scrutiny in recent years:

> Junk fees are fees that are mandatory but not transparently disclosed to consumers. Consumers are lured in with the promise of a low price, but when they get to the register, they discover that price was never really available. Junk fees harm consumers and actively undermine competition by making it impractical for consumers to compare prices, a linchpin of our economic system.

The White House, The Price Isn't Right: How Junk Fees Cost Consumers and Undermine Competition, Mar. 5, 2024, available at available at https://bidenwhitehouse.archives.gov/cea/written-materials/2024/03/05/the-price-isnt-right-how-junk-fees-cost-consumers-and-undermine-competition/.

37. As the Federal Trade Commission said regarding its effort to combat Junk Fees:

> [M]any consumers said that sellers often do not advertise the total amount they will have to pay, and disclose fees only after they are well into completing the transaction. They also said that sellers often misrepresent or do not adequately disclose the nature or purpose of certain fees, leaving consumers wondering what they are paying for or if they are getting anything at all for the fee charged.

Fed. Trade Comm'n, FTC Proposes Rule to Ban Junk Fees – Proposed rule would prohibit hidden and falsely advertised fees, Oct. 11, 2023, available at https://www.ftc.gov/news-events/news/press-releases/2023/10/ftc-proposes-rule-ban-junk-fees.

38. In July 2024, California expanded its Consumers Legal Remedies Act ("CLRA"), amending it to make "drip pricing" illegal. Drip pricing is advertising a price that is less than the actual price that a consumer will have to pay for a good or service. *See* Cal. Civ. Code § 1770(a)(29). Under the new California law, it is now illegal to advertise a low price for a product, only for that product to be subject to additional or mandatory fees later. In other words, "the price listed or advertised to the consumer must be the full price that the consumer is required to pay." *See* California Department of Justice, Office of the Attorney General, *SB 478 Frequently Asked Questions*, available

at https://oag.ca.gov/system/files/attachments/press-docs/SB%20478%20FAQ%20%28B%29.pdf (last accessed Sept. 16, 2025). As the California Department of Justice stated:

> Businesses are free to explain how they set their prices or to *subsequently* itemize the charges that make up the total price that they charge customers. However, the price they advertise or display must be the total price that customers will have to pay for the good or service. Knowing the price of a good of service is essential to competition, and displaying a price that is less than what the customer will actually be charged is deceptive.

*Id*. at p. 4 (emphasis added).

39. In its 2013 publication ".com Disclosures: How to Make Effective Disclosures in Digital Advertising," the FTC makes clear that, when advertising and selling are combined on a website, and the consumer will be completing the transaction online, the disclosures should be provided before the consumer makes the decision to buy—for example, before the consumer "add[s] to shopping cart." *See* Fed. Trade Comm'n, .com Disclosures: How to Make Effective Disclosures in Digital Advertising at ii, 14 (Mar. 2013), available at https://www.ftc.gov/sites/default/files/attachments/press-releases/ftc-staff-revises-online-advertising-disclosure-guidelines/130312dotcomdisclosures.pdf.

40. Seel's conduct also violates the federal Restore Online Shoppers' Confidence Act, 15 U.S.C. §§ 8401–05 ("ROSCA"). Specifically, Seel used "negative option" sales "[that] took advantage of consumers' expectations." *Id*., § 8401(8). Moreover, Seel violated ROSCA by using a negative option feature that (1) did not provide text that clearly and conspicuously discloses all material terms of the transaction before obtaining the consumer's billing information; and (2) did not obtain the consumer's express informed consent before charging the consumer's credit card, debit card, bank account, or other financial account for products or services through such transaction. *Id*., §§ 8403(1), (2).

41. Seel violates federal guidance by adding its fees as line items after the consumer "add[s] to shopping cart," and by failing to disclose the nature of these fees.

## V. Plaintiff's Experience

42. On December 17, 2024, Plaintiff ordered items from Back Country, an online retailer, at its website, backcountry.com.

43. Plaintiff believed—and his receipt confirms—that Back Country charged zero shipping fees for this order.

44. However, due to Defendant's widget, Plaintiff's purchase also included a $9.21 "Worry-Free Delivery" fee charged by Seel that was automatically and surreptitiously added to his cart.

45. Plaintiff did not know the "Worry-Free Delivery" fee existed or that it could have been removed at the time of his purchase.

46. Plaintiff would not have chosen to make a "Worry-Free Delivery" purchase from Seel if he had known it was optional.

## CLASS ALLEGATIONS

47. Plaintiff brings this action on behalf of himself and a nationwide Class of all other similarly situated persons. The proposed Class is defined as:

> All consumers who, within the applicable statute of limitations preceding the filing of this action to the date of class certification, paid a "Worry-Free Purchase" or "Worry-Free Delivery" fee or other similar fee for a service provided by Defendant.

48. Excluded from the Classes are Seel, any entities in which it has a controlling interest, any of its parents, subsidiaries, affiliates, officers, directors, employees, and members of such persons' immediate families, and the presiding judge(s) in this case and their staff. Plaintiff reserves the right to expand, limit, modify, or amend this Class definition, including the addition of one or more subclasses, in connection with his motion for class certification, or at any other time, based upon, *inter alia*, changing circumstances and/or new facts obtained during discovery.

49. Plaintiff reserves the right to modify or amend the definition of the proposed Classes and/or add a subclass(es), if necessary, before this Court determines whether certification is appropriate.

50. The questions here are ones of common or general interest such that there is a well-defined community of interest among the members of the Classes. These questions predominate over questions that may affect only individual class members because Seel has acted on grounds generally applicable to the Classes. Such common legal or factual questions include, but are not limited to:

a. Whether Seel engaged in conduct that prevented or hindered the performance of the contract between e-commerce retailers and the Classes;

b. Whether Seel's alleged misconduct misled or had the tendency to mislead consumers;

c. Whether Seel engaged in unfair, unlawful, and/or fraudulent business practices under the laws asserted;

d. Whether Seel's alleged conduct constitutes violations of the laws asserted;

e. Whether Plaintiff and members of the Classes were harmed by Seel's misrepresentations;

f. Whether Seel was unjustly enriched;

g. Whether Plaintiff and the Classes have been damaged, and if so, the proper measure of damages; and

h. Whether an injunction is necessary to prevent Seel from continuing to engage in the wrongful conduct described herein.

51. The parties are so numerous that joinder is impracticable. Upon information and belief, and subject to class discovery, the Classes consist of thousands of members or more, the identity of whom are within the exclusive knowledge of Seel and can be ascertained only by resort to Seel's records. Seel has the administrative capability through its computer systems and other records to identify all members of the Classes, and such specific information is not otherwise available to Plaintiff.

52. It is impracticable to bring the individual claims of members of the Classes before the Court. Class treatment permits a large number of similarly situated persons or entities to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, or expense, or the possibility of inconsistent or contradictory judgments that numerous individual actions would engender. The benefits of the class mechanism, including providing injured persons or entities with a method for obtaining redress on claims that might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in the management of this class action.

53. Plaintiff's claims are typical of the claims of other Class members in that they arise out of the same wrongful business practices by Seel, as described herein.

54. Plaintiff is a more than adequate representative of the Classes in that Plaintiff is Seel's customer and has suffered damages because of Seel's misrepresentations. In addition:

a. Plaintiff is committed to the vigorous prosecution of this action on behalf of himself and all others similarly situated and has retained competent counsel experienced in the prosecution of consumer class actions;

b. There is no conflict of interest between Plaintiff and the unnamed Class members; and

c. Plaintiff's legal counsel has the financial and legal resources to meet the substantial costs and legal issues associated with this type of litigation.

55. Plaintiff knows of no difficulty that would preclude this case's maintenance as a class action.

56. Seel has acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate corresponding declaratory relief with respect to the Classes as a whole.

57. All conditions precedent to bringing this action have been satisfied and/or waived.

## FIRST CLAIM FOR RELIEF
### Unjust Enrichment
### (On Behalf of Plaintiff and the Nationwide Class)

58. Plaintiff repeats and realleges the above allegations as if fully set forth herein.

59. To the detriment of Plaintiff and the Class, Seel has been, and continues to be, unjustly enriched because of its wrongful conduct alleged herein.

60. Plaintiff and the Class conferred a benefit on Seel.

61. Seel unfairly, deceptively, unjustly, and/or unlawfully accepted said benefit, which, under the circumstances, would be unjust to allow Seel to retain.

62. Seel's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

63. Damages may not adequately compensate the harms Plaintiff and the Class sustained because they are not as certain, equally prompt, or otherwise efficient as restitution. Plaintiff must engage in discovery to determine whether money damages will adequately remedy these harms.

64. Plaintiff and the Class therefore seek disgorgement of all fees wrongfully retained by Seel because of its inequitable conduct as more fully stated herein.

**SECOND CLAIM FOR RELIEF**
**Violations of California's Unfair Competition Law**
**(Cal. Bus. & Prof. Code § 17200, *et seq.*)**
**(On Behalf of Plaintiff and the Nationwide Class)**

65. Plaintiff repeats and realleges the above allegations as if fully set forth herein.

66. Seel's conduct described herein violates the Unfair Competition Law ("UCL"), codified at California Business and Professions Code section 17200, *et seq*.

67. The UCL prohibits, and provides civil remedies for, unfair competition. Its purpose is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services. In service of that purpose, the Legislature framed the UCL's substantive provisions in broad, sweeping language.

68. The UCL imposes strict liability. Plaintiff need not prove that Seel intentionally or negligently engaged in unlawful, unfair, or fraudulent business practices—only that such practices occurred.

69. A business act or practice is "unfair" under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers, and that unfairness is determined by weighing the reasons, justifications, and motives of the practice against the gravity of the harm to the alleged victims.

70. A business act or practice is "fraudulent" under the UCL if it is likely to deceive members of the public.

71. A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

72. Seel committed fraudulent business acts and practices in violation of Cal. Bus. & Prof. Code § 17200, *et seq.*, by affirmatively and knowingly designing a widget that automatically adds "Worry-Free Purchase" or "Worry-Free Delivery" at a late check-out stage and forces consumers to take affirmative action to reject the fee. Further, a reasonable consumer has more reason to confuse the "Worry-Free Purchase" or "Worry-Free Delivery", automatically added to its cart, as mandatory

rather than optional because the fee is separate from any basic free shipping promised by the e-commerce retailers.

73. Seel engages in unfair business practices insofar as the harm to Plaintiff and the Classes from Seel's practices outweighs the utility of Seel's practices. There were reasonably available alternatives to further Seel's legitimate business interests, other than engaging in the immoral, unethical, oppressive, and unscrupulous conduct described herein. Seel's acts and practices offend California's and the federal government's established public policy of truthful advertising in the marketplace and constitute immoral, unethical, oppressive, and unscrupulous activities that substantially injure consumers.

74. Seel's conduct constitutes an "unlawful" act under the UCL because it also constitutes a violation of sections 1770(a)(3), (5), (9), (14), (20), and (29) of the California Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code section 1750, *et seq*.

75. Seel's conduct also constitutes an "unlawful" act under the UCL because it violates the Restore Online Shoppers' Confidence Act, 15 U.S.C. §§ 8401–05 ("ROSCA"). Specifically, Seel used "negative option" sales "[that] took advantage of consumers' expectations." *Id*., § 8401(8). Moreover, Seel violated ROSCA by using a negative option feature that (1) did not provide text that clearly and conspicuously discloses all material terms of the transaction before obtaining the consumer's billing information; and (2) did not obtain the consumer's express informed consent before charging the consumer's credit card, debit card, bank account, or other financial account for products or services through such transaction. *Id*., § 8403(1), (2).

76. Seel's business practices have misled Plaintiff and the Class and, unless enjoined, will continue to mislead them in the future.

77. Plaintiff relied on Seel's misrepresentations.

78. Seel deceived Plaintiff and the Class into purchasing services that they otherwise would not have purchased.

79. As a direct and proximate result of Seel's unfair, fraudulent, and unlawful practices, Plaintiff and the Class suffered and will continue to suffer actual damages by paying for services that they did not want or need. Seel's fraudulent conduct is ongoing and presents a continuing threat to

Plaintiff and the Class that they will be deceived. Plaintiff desires to conduct further business with Seel by continuing to make online purchases through websites that partner with Seel. But Plaintiff cannot rely on Seel's representations unless an injunction is issued.

80. As a result of its unfair, fraudulent, and unlawful conduct, Seel has been unjustly enriched and should be required to disgorge its unjust profits and make restitution to Plaintiff and Class members pursuant to Business & Professions Code sections 17203 and 17204.

81. Pursuant to Business & Professions Code sections 17203 and 17500, Plaintiff and Class members, on behalf of the general public, seek an order enjoining Seel from continuing to engage in, use, or employ its unfair, unlawful, and fraudulent practices.

82. Plaintiff has no adequate remedy at law in part because Seel continues to automatically add fees to all purchases. Therefore, an injunction on behalf of the general public is needed to prevent Seel from continuing to engage in the unfair, deceptive, and misleading practices described herein. Such a remedy cannot be obtained through any of Plaintiff's legal causes of action.

**THIRD CLAIM FOR RELIEF**
**False and Misleading Advertising**
**(Bus. & Prof. Code §§ 17500, *et. seq.*)**
**(On Behalf of Plaintiff and the Nationwide Class, or in the Alternative, the California Class)**

83. Plaintiff repeats and realleges the above allegations as if fully set forth herein.

84. California's False Advertising Law ("FAL"), California Business and Professions Code section 17500, states that "[i]t is unlawful for any . . . corporation . . . with intent . . . to dispose of . . . personal property . . . to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated . . . from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement . . . which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading . . . ."

85. Seel's material misrepresentations and omissions alleged herein violate Business and Professions Code section 17500.

86. Seel knew or should have known that its misrepresentations and omissions were false,

deceptive, and misleading.

87. Pursuant to Business and Professions Code sections 17203 and 17500, Plaintiff and Class members, on behalf of the general public, seek an order enjoining Seel from continuing to engage in, use, or employ its deceptive practices. Such an order is not obtainable through any of Plaintiff's legal causes of action, making any remedy at law inadequate.

88. Further, Plaintiff requests an order awarding Plaintiff and Class members restitution of the money wrongfully acquired by Seel by means of said misrepresentations.

89. Additionally, Plaintiff and Class members seek an order requiring Seel to pay attorneys' fees pursuant to California Civil Code section 1021.5.

## <u>FOURTH CLAIM FOR RELIEF</u>
**Violation of California's Consumers Legal Remedies Act ("CLRA")**
**Cal. Civ. Code § 1750, *et seq.***
**(On Behalf of Plaintiff and the Nationwide Class, or in the Alternative, the California Class)**

90. Plaintiff incorporates the preceding allegations by reference as if fully set forth herein.

91. This cause of action is brought pursuant to the Consumers Legal Remedies Act ("CLRA"), California Civil Code section 1750, *et seq*. Plaintiff and each member of the proposed Classes are "consumers" as defined by California Civil Code section 1761(d). Seel's sale of merchandise and shipping insurance to consumers were "transactions" within the meaning of California Civil Code section 1761(e). The merchandise purchased by Plaintiff and the Class are "goods" within the meaning of California Civil Code section 1761(a).

92. Seel violated and continues to violate the CLRA by engaging in the following practices proscribed by California Civil Code section 1770(a) in transactions with Plaintiff and the Class which were intended to result in, and did result in, the sale of merchandise:

a. "Misrepresenting the affiliation, connection, or association with, or certification by, another" (a)(3);

b. "Representing that goods or services have . . . characteristics . . . that they do not have" (a)(5);

c. "Advertising goods or services with intent not to sell them as advertised" (a)(9);

d. "Representing that a transaction confers or involves rights, remedies, or obligations that it does not have or involve, or that are prohibited by law" (a)(14)

e. "Advertising that a product is being offered at a specific price plus a specific percentage of that price unless (A) the total price is set forth in the advertisement, which may include, but is not limited to, shelf tags, displays, and media advertising, in a size larger than any other price in that advertisement, and (B) the specific price plus a specific percentage of that price represents a markup from the seller's costs or from the wholesale price of the product" (a)(20); and

f. "Advertising, displaying, or offering a price for a good or service that does not include all mandatory fees or charges" (a)(29).

93. Specifically, Seel designed a widget that automatically adds "Worry-Free Purchase" or "Worry-Free Delivery" at a late check-out stage and forces consumers to take affirmative action to reject the fee. Further, a reasonable consumer has more reason to confuse the "Worry-Free Purchase" or "Worry-Free Delivery", automatically added to its cart, as mandatory rather than optional because the fee is separate from any basic free shipping promised by the e-commerce retailers.

94. Pursuant to section 1782(a) of the CLRA, Plaintiff's counsel notified Seel in writing by certified mail of the particular violations of section 1770 of the CLRA and demanded that it rectify the problems associated with the actions detailed above and give notice to all affected consumers of Seel's intent to act. In the event Seel fails to respond to Plaintiff's letter and/or fails to agree to rectify the problems associated with the actions detailed above, Plaintiff will amend his Complaint to include claims for actual and statutory damages, as appropriate, against Seel.

95. Plaintiff also seeks public injunctive relief, as described above. Such a remedy cannot be obtained through any of Plaintiff's legal claims.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, demands a jury trial on all claims so triable and judgment as follows:

(a) Certification of this matter to proceed as a class action on behalf of the Classes;

(b) For declaratory and injunctive relief as set forth above;

(c) For an order requiring Seel to disgorge and make restitution of all monies it acquired by means of the unlawful practices set forth above;

(d) For compensatory damages according to proof;

(e) For reasonable attorneys' fees and costs of suit;

(f) For pre-judgment interest; and

(g) Awarding such other relief as this Court deems just, proper, and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff and all others similarly situated hereby demand trial by jury on all issues in this Class Action Complaint that are so triable.

Dated: May 29, 2026

**KALIELGOLD PLLC**

By: */s/ Amanda J. Rosenberg*
Amanda J. Rosenberg
Jeffrey D. Kaliel
Sophia G. Gold

*Attorneys for Plaintiff and the Classes*